

FILED

NOV 08 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:19-MJ-00211-SKO |
| Plaintiff, | ORDER TO UNSEAL CRIMINAL COMPLAINT |
| v. | |
| David Michael Marin, et al., | |
| Defendants. | |

Pursuant to the motion by the United States, IT IS HEREBY ORDERED that the attached *redacted* version of Criminal Complaint be unsealed and become public record.

DATED: November 8, 2019

_Sheila K. Oberto_
HON. SHEILA K. OBERTO
U.S. MAGISTRATE JUDGE

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of California



**NOV 07 2019**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| David Michael MARIN, et al. (See Attachment 1) | ) ) ) | **1: 1 9 MJ 0 0 2 1 1 SKO** |
| _____ | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___3/31/2019 to 10/14/2019___ in the county of ___Fresno and Kern___ in the

___Eastern___ District of ___California___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841 | Distribution and Possession with Intent to Distribute a Controlled Substance; Aid and Abet |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Michael Vo, attached hereto and incorported by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Vo, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___November 7, 2019___

_____
*Judge's signature*

City and state: ___Fresno, CA___

Hon. Sheila K. Oberto, US Magistrate Judge
*Printed name and title*

Attachment 1

List of Defendants

1.   David Michael MARIN

2.   Angel DELGADILLO, Sr.   



7.   Armando Acosta TORO

8.   Carlos Javier Felix LOPEZ

9.   Jose Guadalupe BOJORQUEZ

10.  Monica GUTIERREZ

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I submit this affidavit in support of an application for a criminal complaint charging the following persons with violations of Title 21, United States Code § 841 (a)(1) distribution and possession with intent to distribute controlled substances; aid and abet:

1. David Michael MARIN **(Transaction #1, Transaction #2, Transaction #3)**

2. Angel DELGADILLO, **(Transaction #1)**



7. Armando Acosta TORO **(Transaction #3)**

8. Carlos Javier Felix LOPEZ **(Transaction #3, Transaction #4, Transaction #5)**

9. Jose Guadalupe BOJORQUEZ **(Transaction #4)**

10. Monica GUTIERREZ **(Transaction #5)**

1

**TABLE OF CONTENTS**

Contents

I.   AGENT'S BACKGROUND ............................................................................. 5

II.  INTRODUCTION ....................................................................................... 7
     A.   SUMMARY OF THE INVESTIGATION ............................................... 7
     B.   PURPOSE OF THE AFFIDAVIT ......................................................... 9
     C.   TABLE OF TRANSACTIONS ............................................................. 9
     D.   TARGET SUBJECTS ....................................................................... 9

III. PROBABLE CAUSE ................................................................................ 14

     A.   **TRANSACTION #1** - On March 31. 2019. David MARIN sold nine ounces of cocaine (sourced by Angel DELGADILLO. Sr.) to ███████████ who subsequently delivered the cocaine to ███████████ .......................................... 14

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

     C.   **TRANSACTION #3** - On June 17, 2019, MARIN ordered 18 pounds of Methamphetamine from Armando TORO who obtained the drugs from Carlos LOPEZ........ 27

          1.   At approximately 5 PM, on June 17, MARIN calls TORO to order "19" units of suspected narcotics, who then relays the order to the user of Target Telephone 19 (later identified as Carlos LOPEZ)................................................... 27
          2.   TORO and LOPEZ discussed meeting at TORO's house to conduct the transaction. 36

3.     Surveillance then observed TORO travel to his residence, and then inform LOPEZ that he was at his residence.................................................................................................. 38

4.     MARIN then called TORO and informed TORO that the deal will be decreased from 19 pounds to 18 pounds; TORO relayed that information to LOPEZ ................................... 39

5.     Agents observe LOPEZ's suspected runner arrive at TORO's complex, stay for roughly five minutes, then depart. ............................................................................................ 41

6.     Agents see MARIN arrive at TORO's apartment complex, meet with TORO, and exchange white plastic bags...................................................................................................... 42

7.     Agents stopped MARIN and BROWN and located 18 pounds of methamphetamine in a white plastic bag in MARIN's trunk............................................................................ 44

8.     After the seizure, TORO and LOPEZ expressed concerns that MARIN was not answering his phone............................................................................................................ 45

9.     Agents confirm that LOPEZ is the user of Target Telephone 19. .............................. 48

D.     On August 8, 2019, Agents searched DELGADILLO's residence and seized approximately ½ kilogram of cocaine ............................................................................ 53

E.     **TRANSACTION #4** - On October 6, 2019, agents seized approximately 3.5 kilograms of cocaine and 5 pounds of methamphetamine from Jose BOJORQUEZ, a runner for LOPEZ's Mexican Source of Supply (SOS2). ███████████████████████████ ████████████████████████████ ............................................................ 55

3.     On October 3, 2019, LOPEZ discussed with Source of Supply #2 (SOS2) furnishing a load of suspected narcotics to LOPEZ on October 5 through the use of a courier.............. 59

5.     LOPEZ and BOJORQUEZ postponed the suspected narcotics transaction one day, to October 6, 2019................................................................................................................... 60

7.     Agents stop BOJORQUEZ in Kern County and seize 3.5 kilograms of cocaine and 5 pounds of methamphetamine. .......................................................................................... 62

3

F. **TRANSACTION #5** - On October 14, 2019, agents seized two kilograms of cocaine brokered by LOPEZ ████████████████ and delivered to Monica GUTIERREZ █ ████████████ ........................................................................... 63

IV. CONCLUSION ........................................................................... 67

4

# I.   AGENT'S BACKGROUND

1.   I am a Special Agent ("SA") with the Department of Justice, Drug Enforcement Administration ("DEA"), and have been since October 2017. As a Special Agent ("SA"), my duties include the development and evaluation of information in order to detect the possession, cultivation, smuggling, and trafficking of controlled substances in violation of federal law. I am presently assigned to the San Francisco Field Division, Fresno District Office, located in Eastern District of California. Previously, I was police officer for the United States ("U.S.") Department of Veterans Affairs and Broadmoor (California) Police Department. I have successfully completed twenty-week DEA Basic Agent Training Academy at the Justice Training Center in Quantico, Virginia. The training encompassed instruction on the Controlled Substance Act and the investigation of federal code violations, including, but not limited to, Title 21 of U.S. Code, Sections 841 and 846, Possession with the Intent to Distribute a Controlled Substance and Conspiracy, respectively.

2.   Additionally, I have completed various training provided by the DEA, the United States Attorney's Office ("USAO"), state/local law enforcement agencies, and private institutions. I earned a bachelor's degree in criminal justice studies from an accredited California State University in 2014. I have attended an intensive 888-hour California Peace Officer Training and Standards ("POST") Basic Police Academy in 2013 and, in 2015, completed the U.S. Department of Veteran's Affairs Basic Police Officer Course, a federal uniform law enforcement training program. The aforementioned local and federal basic police academies training involved, but not limited to, the recognition of illegal drugs and preliminary investigations of controlled substances. I have also received training in electronic and internet exploitation through private institutions. Furthermore, I have taken classes specifically for wiretap investigations. I am certified by California Attorney General's Office to conduct and participate with State wiretaps. In order to be certified, I attended the Electronic Surveillance class, which involved instructions by the California Department of Justice (Cal DOJ) on the practical, technical, and legal aspects of investigations with wire and electronic communications.

COMPLAINT AFFIDAVIT

1  Similar to the Cal DOJ class, I have also attended a Federal Title III wiretap investigation class,

2  presented by the USAO, which provided a deeper insight into advance federal investigations, the

3  Omnibus Crime Control and Safe Street Act of 1968, and the Electronic Communication Privacy

4  Act of 1986.

5        3.        I have conducted and participated in numerous investigations into

6  organizations involved in trafficking controlled substances as a case agent or in a supporting role

7  to other investigations lead by agents and officers.  I have been involved in investigations

8  concerning the unlawful manufacture, cultivation, possession, distribution, and transportation of

9  controlled substance offenses, in violation of Title 21, United States Code, Sections 841 and 846.

10  I have participated in different aspects of investigations including, but not limited to, physical

11  surveillances, electronic surveillances, physical and digital evidence gathering, analyzing

12  information derived from telephone call detail records, undercover operations, and servicing of

13  search and arrest warrants, which resulted in the apprehension of suspects, firearms, and seizure

14  of narcotics.

15        4.        Furthermore, through my training, education, experience, conversations with

16  other case agents, senior narcotics agents/officers, debriefing of confidential sources,

17  interviewing of defendants, suspects, and witnesses, whom have personal knowledge of

18  trafficking controlled substances, I have become familiar with the tactics and measures which

19  drug traffickers obtain, conceal, possess, transport, and/or sell controlled substances. I have also

20  become acquainted to the methods, language, and terminologies used by drug traffickers and

21  members of organized crime.  I have also learned some of the methods and language used by

22  those involved in the illegal possession and distribution of firearms.

23        5.        The facts in this affidavit come from my personal observations, training,

24  education, and experience, and information obtained from agents, other law enforcement

25  officers, and witnesses; from my review of records and reports relating to the investigation.

26  Therefore, wherever in this affidavit I assert that a statement was made, the information was

27  provided by agents, other law enforcement officers, or witnesses who may have had either direct

28

1   or hearsay knowledge of that statement, and to whom others or I have spoken or whose reports I

2   have read and review. Such statements are among many statements made by others and are stated

3   instances, and in part unless otherwise indicated. Since the submission this affidavit is for the

4   limited purpose of securing an order authorizing the purposed complaint and arrest warrants, I

5   have not included details of every aspect of the investigation. However, I have not purposely

6   excluded any information that is exculpatory in nature. This affidavit's intention is to show

7   merely that there is sufficient probable cause for the requested complaint.

8                              **II.      INTRODUCTION**

9       **A.    SUMMARY OF THE INVESTIGATION**

10      6.          In the summer of 2018, the Fresno Police Department ("FPD") began an

11  investigation into the drug trafficking activities of the late Darnell SENEGAL[1] and William Lee

12  MUHAMMAD.  MUHAMMAD (who used Target Telephone 3 (559-476-7120)) was identified

13  to be a Fresno-based drug dealer.  At the request of FPD, the United States Drug Enforcement

14  Administration ("DEA") began a federal investigation into MUHAMMAD and initiated a federal

15  wiretap investigation on MUHAMMAD's telephone (Target Telephone 3) (1:18-SW-00421-

16  LJO).

17      7.          During the wiretap, investigators identified David MARIN (the user of

18  Target Telephone 10 (559-681-9933)), MUHAMMAD's suspected drug source of supply.  Once

19  investigators recognized MARIN's role in the drug trafficking scheme, agents began the second

20  iteration of wiretaps, and initiated interception of Target Telephone 10. (1:19-SW-00087-LJO).

21  

22

23

24      8.          During the wiretap of MARIN, agents identified two of MARIN's drug

25  sources of supply ("SOS"):  Armando Acosta TORO (who used Target Telephone 10 (559-681-

26  9933)), and Carlos Javier Felix LOPEZ (who used several telephones:  telephone number 209-

27  ────────────────────

    [1] SENEGAL died due to health complications on September 19, 2018.

28

1 | 581-6014, Target Telephone 16 (559-803-3283), Target Telephone 21 (559-824-6846), and

2 | Target Telephone 22 (559-835-7889)).

3 |      9.       On June 13, 2019, investigators began the third iteration of wiretap, and

4 | received Court authorization to intercept additional telephones, including: (1) Target Telephone

5 | 16, used by Carlos LOPEZ, and (2) Target Telephone 13 (559-728-8128), used by Armando

6 | Acosta TORO. (1:19-SW-180-LJO). The Court authorized interception for a period of 30 days,

7 | however, LOPEZ terminated the use of his phone prior to interception was based and began

8 | cycling through different telephones. The interceptions confirmed that LOPEZ and TORO were

9 | wholesale drug distributions in California, and resulted in the seizure of a load of approximately

10 | 18 pounds of methamphetamine from MARIN, who had purchased it from LOPEZ and TORO.

11 |      10.     On September 19, 2019, investigators began the fourth iteration of wire

12 | intercepts by intercepting Target Telephone 22 (559-835-7889), used by Carlos LOPEZ, and

13 | Target Telephone 20 (559-790-5918), used by a suspected runner for LOPEZ (1:19-SW-00303-

14 | LJO). The fourth iteration of wiretaps resulted in the identification of LOPEZ's two Mexican

15 | sources of supply of narcotics (SOS1 and SOS2).

16 |

17 |

18 | The fourth iteration of wiretaps resulted in the seizure

19 | of several kilograms of cocaine and methamphetamine, including (a) an October 6, 2019 seizure

20 | of approximately 3.5 kilograms of cocaine and 5 pounds of methamphetamine from Jose

21 | BOJORQUEZ – which had been sourced by SOS2 and to be delivered to LOPEZ

22 | ; and (b) October 14, 2019 seizure of approximately 2 kilograms of cocaine a from

23 | GUTIERREZ – which had been arranged by LOPEZ

24 |

25 |

26 |

27 |

28 |

8

**B.     PURPOSE OF THE AFFIDAVIT**

11.        This affidavit is being submitted in support to show that there is sufficient probable cause for the issuance of a criminal complaint and arrest warrants for **TARGET SUBJECTS** (see section TARGET SUBJECTS).

12.        Based upon my personal participation in this investigation, along with other Special Agents and Task Force Officers of the Drug Enforcement Administration ("DEA"), Detectives and Officers from the Fresno Police Department ("FPD"), Deputies of the Fresno County Sheriff's Office ("FCSO"), United States Homeland Security Investigations ("HSI"), Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and information obtained from confidential sources, I am familiar with all aspects of this investigation. Based on this familiarity and other information I have reviewed and determined to be reliable, I declare that the facts contained in this affidavit show that there is probable cause that the target subjects have engaged in the following offenses:

a.   Distribution and Possession of controlled substances with intent to distribute; aid and abet; in violation of Title 21 U.S.C. § 841(a)(1)

**C.     TABLE OF TRANSACTIONS**

Attached as Attachment 2 is a Table indicating the five primary transactions charged in this complaint.

**D.     TARGET SUBJECTS**

13.        **David Michael MARIN (Transaction #1, Transaction #2, and Transaction #3),** the user of Target Telephone 10 (559-681-9933), was identified as MUHAMMAD's source of supply for a variety of narcotics. MARIN was a primary target of the Title III investigation, under court order 1:19-SW-00087-LJO, and was involved with several large scale drug transactions, notably, a June 17, 2019 transaction where MARIN purchased 18 pounds of methamphetamine from TORO and LOPEZ.  Agents seized the 18 pounds of methamphetamine from MARIN's trunk after the transaction.

14.        **Angel DEGADILLO Sr. ("DELGADILLO") (Transaction #1)** was

1  identified as a source of supply of narcotics in Fresno, CA. During the investigation into David

2  MARIN's drug trafficking organization ("DTO"), investigators identified DELGADILLO as a

3  narcotics supplier to MARIN.  On March 31, 2019, DELGADILLO sold MARIN a quarter

4  kilogram of cocaine ████████████████████████████████████████

5  ████████.  On August 8, 2019, Detectives of the Fresno Police Department and Special

6  Agents of the DEA conducted a search warrant upon DELGADILLO's residence. The search

7  warrant resulted in the seizure of approximately 640 grams of cocaine that was hidden in the

19.     **Armando Acosta TORO (Transaction #3)**, user of Target Telephone 13 (559-728-8128) was identified as a methamphetamine source of supply ("SOS") for David MARIN. During course of the investigation, intercepted telephone calls indicated TORO was a narcotics supplier who worked alongside Carlos Javier LOPEZ. On July 17, 2019, TORO sold MARIN 18 pounds of methamphetamine.  MARIN placed the order over the phone to TORO. TORO called LOPEZ to source the methamphetamine. After numerous intercepted calls, surveillance observed a courier arrive at TORO's apartment and leave shortly thereafter. Within minutes of the courier's departure, TORO contacted MARIN and told MARIN that TORO had the narcotics. Surveillance then observed MARIN arrive at TORO's apartment and exchange bags. MARIN departed the apartment complex. FPD officers stopped MARIN's vehicle, searched the vehicle, and located approximately 18 pounds of methamphetamine in the trunk.

20.     **Carlos Javier Felix LOPEZ (Transaction #3, Transaction #4, Transaction #5)**, user of Target Telephone 16 (209-501-6014), Target Telephone 19 (55-803-0440), Target Telephone 21 (559-824-6846), and Target Telephone 22 (559-835-7889), was identified during the investigation into David MARIN as a narcotics supplier. As indicated in the

1  paragraph above, LOPEZ was identified supplying TORO and MARIN with 18 pounds of

2  methamphetamine.

3       21.     LOPEZ became the primary target of the investigation. In October 2019,

4  LOPEZ called his Mexico SOS ("SOS2") for narcotics. In turn, SOS2 connected BOJORQUEZ

5  with LOPEZ. BOJORQUEZ discussed picking up suspected money from LOPEZ.. Agents

6  observed LOPEZ meet with BOJORQUEZ in Fresno, and then followed BORORQUEZ ▮▮▮▮

7  ▮▮▮▮▮▮▮▮ Agents observe BOJORQUEZ meet with an unknown male ▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and handed something to BOROQUEZ.

9  Agents followed BOJORQUEZ ▮▮▮▮▮▮ to Kern County, CA, where they stopped his

10  car.  After a canine alerted the odor of narcotics emanating from the vehicle, agents searched the

11  car and located approximately 3.5 kilogram of cocaine and 5 pounds of methamphetamine.

12       22.     **Jose Guadalupe BOJORQUEZ (Transaction #4)** was identified as the user

13  of telephone number 925-483-5162 when he met with LOPEZ to conduct a narcotic transaction.

14  After LOPEZ and BOJORQUEZ's had met, investigators determined the location of

15  BOJORQUEZ residence and learned his role as drug courier for a Mexican-based source of

16  supply, as noted above. Subsequently, BOJORQUEZ was directed ▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮ and transport a quantity of narcotics to LOPEZ. Investigators ▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ observed BOJORQUEZ

19  receiving a dark colored duffle bag from an unidentified individual. Subsequently, law

20  enforcement conducted an interdiction via traffic stop on BOJORQUEZ ▮▮▮▮▮▮▮

21  ▮▮▮▮. The traffic stop resulted in the seizure of approximately 3.5 kilogram of cocaine and

22  5 pounds of methamphetamine.

23       23.     **Monica GUTIERREZ (Transaction #5)**, the user of telephone number 559-

24  776-5820, was identified during the interception of Target Telephone 22, used by Carlos

25  LOPEZ. During the series of interceptions, GUTIERREZ was recognized as a narcotics dealer

26  and a drug courier for ▮▮▮▮▮▮▮▮▮ On October 14, 2019, surveillance was established in

27  Mendota, CA in the vicinity of GUTIERREZ residence based on intercepted conversations

28

1   between LOPEZ, ████████ GUTIERREZ, and ████████████ The intercepted

2   conversations, which occurred night prior, revealed ██████ would meet with GUTIERREZ to

3   provide a quantity of narcotics. As surveillance was observing GUTIERREZ's residence,

4   investigators saw ████████ arrived to the residence and met with GUTIERREZ. ████████

5   retrieved a lite-blue duffle bag from his vehicle and entered the residence with GUTIERREZ.

6   After a few minutes passed, ████████ returned to his vehicle with the lite-blue duffle bag, that

7   appeared to be empty, and departed the area. As ████████ left the area, GUTIERREZ was seen

8   leaving her residence to, as noted in the interceptions, to meet with ████████. Subsequently,

9   GUTIERREZ was interdicted by law enforcement which revealed 2 kilograms of cocaine and 2

10   baggies of multiple bindles of cocaine and methamphetamine. Investigators then conducted a

11   following search warrant on her residence and located mini-bindles of approximately 243.1g of

12   cocaine and 499.8g of methamphetamine packaged for sales. GUTIERREZ was arrested for

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    PROBABLE CAUSE

**A.    TRANSACTION #1 - On March 31, 2019 David MARIN sold nine ounces of** ~~(received by Angel DELGADILLO, Sr.)~~ ██████████████████████

26.    On March 31, 2019, David MARIN sold ████████████████ approximately 282 grams (approximately 9 ounces) of cocaine. MARIN is believed to have received the cocaine from Angel DELGADILLO, Sr. ███████████████████████

███████████████████████████████████████████████████████

27.    On March 31, the DEA and FPD intercepted telephone communications between MARIN, using target telephone number 559-681-9933 ("Target Telephone 10" and/or "TT10"), and ███████████████████████████████████ and MARIN's telephonic conversations indicated ████████████ was brokering narcotics sales on the behalf of ████████████

28.    On March 31, 2019, at approximately 4:40 PM (Call #1201), ██████████ called MARIN and stated, "My boy is ready." MARIN responded, "He [later identified as ██████████ dropped the money off to you already?" ██████████████████████ had not dropped off the money yet; but that ████████ wanted the same thing but only had "eight" right now. MARIN said, "Just call me when he drops off the money. We will figure it out then." Based on the context of the investigation, agents believed the call concerned a drug deal.

███████████████████████████████████████████████████████

29.    At approximately 5:00 PM, investigators established surveillance in the vicinity of S Crystal Avenue and W Orleans Avenue, Fresno, CA, an area which was identified, via Department Motor Vehicle ("DMV") database, as MARIN's residence (1583 W Orleans

14

COMPLAINT AFFIDAVIT

1   Avenue, Fresno, CA). At approximately 5:25 PM, SA Shawn Riley observed a Black male adult,

2   identified as MARIN via DMV photograph and previous observations of MARIN. MARIN was

3   one of several participants congregating near a dark colored vehicle in front of 1583 W Orleans

4   Avenue. MARIN was dressed in gray hat and gray shirt.

5         30.      While on surveillance at W Orleans Avenue, SA Riley observed MARIN

6   enter into a silver/gray sports utility vehicle ("SUV") that resembled a Ford Explorer (hereinafter

7   referred to as the "Ford Explorer" and/or "MARIN's SUV"). MARIN then traveled northbound

8   on S Crystal Blvd. Det. Rey Medeles observed MARIN, the sole occupant of the Ford Explorer,

9   bearing CA license plate 8BLT214, traveled northbound on N Marks Avenue.

10        31.      At approximately 5:53 PM, SA Angela Cruz observed MARIN traveled to

11   ████████████████████████████████████ Fresno, CA, an apartment complex

12   ████████████████. During this surveillance, investigators intercepted an outgoing

13   call ████████████████. In summary of Call 1254, MARIN stated he [MARIN] was

14   right behind his ████████ car and ████████ replied with "alright, I'm on my way

15   out there."

16        32.      Moments later, agents observed MARIN drive back to 1583 W Orleans

17   Avenue.

18        33.      At approximately 6:28 PM, investigators intercepted an outgoing call from

19   MARIN, using Target Telephone 10, to DELGADILLO, using telephone number 559-317-8501,

20   identified further below. In summary of Call #1264, MARIN stated he was ready and

21   DELGADILLO responded with a request "to give me 30 minutes." At approximately 6:40 PM,

22   SA Riley observed MARIN return to W Orleans Avenue and parked his vehicle and entered his

23   [MARIN's] residence.

24        34.      After MARIN returned W Orleans Avenue, surveillance units observed

25   MARIN exited his automobile and entering into his residence, located at 1583 W Orleans

26   Avenue, Fresno, CA, and reemerging shortly after with an unidentified item. SA Riley observed

27   MARIN placed the item into his [MARIN's] SUV and walked towards the south side of the

28

COMPLAINT AFFIDAVIT

1    residence. At approximately 7:25 PM, MARIN, using TT10, called DELGADILLO, who was

2    using telephone number 559-317-8501, and DELGADILLO reported in a heavy accent, "ten [10]

3    minutes". At approximately 7:46 PM, MARIN received a call from DELGADILLO. As the call

4    connected, MARIN stated he would be outside. At this moment, SA Riley observed a Nissan

5    automobile approached W Orleans Avenue and parked behind MARIN's SUV. Task Force

6    Officer ("TFO") Joshua Sharp observed the aforementioned Nissan[2] automobile displayed CA

7    license plate 6EPP147, registered to DELGADILLO's son, Angel DELGADILLO Jr. with a

8    listed address of 2143 S Tupman Avenue, Fresno, CA, as the automobile departed and traveled

9    southbound on N West Blvd from Kearny Blvd. Based on surveillance and intercepted telephone

10   conversations, I concluded the unidentified driver of the Nissan automobile transported the

11   requested-suspected narcotics to MARIN ██████████████████████████████

12       35.        · It should be noted that subsequent to these calls with Angel DELGADILLO

13   and MARIN, Detective Rey Medeles compared the voices on these calls to his interview with

14   Angel DELGADILLO, which is further described in section III. Subsection "D" of this affidavit,

15   and Detective Medeles confirmed that DELGADILLO's voice was the same as the participant

16   speaking with MARIN.

17       36.        Once the Nissan automobile departed, SA Riley observed MARIN's Ford

18   Explorer lights turned on and then traveled towards S Crystal Avenue then southbound. TFO

19   Sharp then observed MARIN traveled eastbound. SA Riley observed MARIN returning to W

20   Orleans Avenue. At approximately 7:53 PM, SA Riley observed MARIN departed again.

21   MARIN then traveled northbound on S Crystal Avenue. As MARIN traveled on,

22   DELGADILLO, using telephone number 559-317-8501, called MARIN, using TT10.

23   DELGADILLO stated MARIN was two-hundred short and MARIN replied he [MARIN] would

24

25   [2] During an interview on August 8, 2019, TFO Sharp asked Angel Delgadillo, Jr. who was the primary operator of
     the Nissan automobile, bearing CA license plate 6EPP147. Angel Delgadillo, Jr. reported his father DELGADILLO
     was the only person who drove the Nissan. Additionally, on August 8, 2019, Det. Rey Medeles interviewed

26   DELGADILLO who admitted to being the primary driver of the Nissan. Subsequently, Det. Medeles conducted a
     voice comparison from the user of telephone number 559-317-8501 and DEGADILLO, which Det. Medeles

27   confirmed was the same person, therefore, investigators confirmed user of telephone number 559-317-8501 was
     Angel DELGADILLO Sr.

28

COMPLAINT AFFIDAVIT

1    contact DELGADILLO tonight. Based on the context of the investigation, I believe MARIN had

2    provided DELGADILLO insufficient funds during the above the drug transaction.

3          37.       As surveillance units continue to follow MARIN to the Rose Garden

4    Apartments, investigators intercepted an outgoing call from MARIN ███████████ as

5    MARIN was approaching the apartment building,████ The call appeared to have connected but

6    terminated immediately after the connection. At approximately 8:04 PM, SA Cruz observed

7    MARIN arrived to the apartment complex, exited his vehicle, and met with ████████, who

8    was wearing a red hat and red shirt and stood by the apartment complex. Det. Medeles observed

9    a hand-to-hand transaction of a small item between MARIN and ██████R. After meeting

10    with ████████, MARIN entered his Ford Explorer and enter the driver side, meanwhile

11    ██████████ walked eastbound and into ██████████████ as Det. Medeles video recorded

12    the separation and departure of the two parties.

13          38.       As surveillance continued on ████████████████████ at

14    approximately 9:08 PM, Det. Medeles observed an adult Black Male, later identified as

15    ███████████████████ walked out of ██████████ apartmen ██████████

16    and opened the passenger door to a silver Hyundai sport utility vehicle then entered the driver's

17    side ██████████ then traveled southbound on N Marks Avenue. As ██████████ traveled

18    ████████████████████████████████████████

19    ████████████████████████████████████████

20    ████████████████████████████████████████

21          39.       After ██████████ departed from the Rose Garden Apartment complex,

22    under the directive of investigators, Fresno Police Department canine (and/or "K-9") team,

23    Officers Brandon Lyon, Nick Palomino, and Grey Colon-Reyes initiated a traffic stop on

24    ████████████████████████████████████████

25    ████████████████████████████████████████

26    ████████████████████████████████████████

27          40.       As a result of the traffic stop, Fresno police officers identified ██████████

28

1   and seized approximately 282 grams (or approximately 9 ounces when the measurement is

2   converted) of suspected cocaine ███████████████████████

3       41.        On the following day, April 1, 2019, ██████████████████

4   ████████ called MARIN, using TT10. At approximately 5:11 PM, in summary of the call,

5   ████████ informed MARIN that ████████ "got picked up last night" and discussed the

6   surrounding ∧events regarding the traffic stop involving ████████████ reported, "With

7   the whole thing on it. On my momma…" MARIN then inquired, "Oh man seriously, ███..They

8   [the Police] got the package too?" and ████████ affirmed and continued to explain to

9   MARIN about the police presence around the neighborhood at night and warned ████████

10  not to leave.





45.       Based on the intercepted communications of pre- and post-arrest of ▮▮▮▮, the context of the investigation, my training, experience, and education, I concluded ▮▮▮▮ received the suspected cocaine (approximately 282 grams, which converts to nine [9] ounces) from ▮▮▮▮, whom was ultimately supplied by David MARIN and DELGADILLO.

19

COMPLAINT AFFIDAVIT



COMPLAINT AFFIDAVIT



21

COMPLAINT AFFIDAVIT



COMPLAINT AFFIDAVIT



COMPLAINT AFFIDAVIT





24  ///
25  ///
26  ///
27  ///
28

**C.     TRANSACTION #3 - On June 17, 2019, MARIN ordered 18 pounds of Methamphetamine from Armando TORO who obtained the drugs from Carlos LOPEZ.**

1.      At approximately 5 PM, on June 17, MARIN calls TORO to order "19" units of suspected narcotics, who then relays the order to the user of Target Telephone 19 (later identified as Carlos LOPEZ)

61.      On June 17, 2019, at approximately 5:35 pm, a telephone call was intercepted from MARIN using Target Telephone 10 to TORO using Target Telephone 13.  The following is an excerpt of this phone call,

| NAME | TRANSCRIPTION |
|------|---------------|
| MARIN | You tell *paisa* I need nineteen (19). |
| TORO | Nineteen (19)? |
| MARIN | Clear. |
| TORO | Oh, okay. He say he has a lot.  Let me, let me check... |
| | [Voices overlap] |
| MARIN | Okay. |
| TORO | For, for when tomorrow? |
| MARIN | Cause the coyote here, the coyote here. |
| TORO | Okay. |

62.      During this phone call MARIN told TORO he [MARIN] wanted "nineteen (19)".  Based on my training and experience, I concluded MARIN was using this term to refer to a quantity of drugs.  TORO's response of, "Nineteen (19), oh okay, he has a lot, let me check", indicated he [TORO] would be able to obtain the drugs from a third party but had to confide with ~~was available N.U~~ *5/20* third party, later determined to be LOPEZ, to determine if the amount.  Later in the conversation, MARIN referred to another third party.  MARIN's statement that the third party, "wanna go", "wanna hurry up and go", and "don't want to stay" indicated that MARIN was obtaining the drugs on behalf of another individual who was in a hurry to depart.

63.      At approximately 5:36 PM, approximately one minute after the above phone call between TORO and MARIN, a phone call was intercepted from TORO using Target

Telephone 13 (559-728-8128) to the user of Target Telephone 19 (559-803-0440), later identified as Carlos LOPEZ (*see section below "Identification of Carlos Lopez as User of Target Telephone 19*). The following is an excerpt of this telephone call.

| NAME | TRANSCRIPTION |
|------|---------------|
| TORO | You had mentioned you had a lot of windows. So do, do, do you have plenty of them? |
| LOPEZ | Yeah. |
| TORO | [Aside: Background noise] Close to twenty (20)? |
| LOPEZ | [Aside: Background noise] Uh-huh. |
| TORO | Yeah? |
| LOPEZ | Yeah. |
| TORO | [Aside: Background noise] Okay, so I would need about nineteen (19). |
| LOPEZ | [Aside: Background noise] Okay. |

64.     During this phone call TORO asked LOPEZ if he [LOPEZ] had a lot of "windows" and LOPEZ affirmed. I know, based on my training and experience that the term windows is a reference commonly used by drug traffickers to refer to methamphetamine. TORO subsequently asked if LOPEZ had "nineteen" windows which LOPEZ indicated he [LOPEZ] had. Based on this quantity of drugs, which was the same amount ordered by MARIN during the prior phone call, I concluded, that TORO was asking LOPEZ for methamphetamine on MARIN's behalf. TORO and LOPEZ then discussed when the methamphetamine transaction would occur.

65.     At approximately 5:37 PM, a follow up call was intercepted from TORO

COMPLAINT AFFIDAVIT

using TARGET TELEPHONE 13 to MARIN using TARGET TELEPHONE 10. The following

is an excerpt of this phone call.

| NAME | TRANSCRIPTION |
|---|---|
| TORO | Yeah, whenever you're ready, bro. |
| MARIN | Okay ya'll ready. Let me get that, let me get the *feria* (money) together. Hey? |
|  | [Voices overlap] |
| TORO | Okay. Uh-huh? |
| MARIN | Tell coyote get ready, man. Yeah, that… |
|  | [Voices overlap] |
| TORO | Yeah, ready. |
| MARIN | Nineteen (19). |
| TORO | Yeah, ready. |
| MARIN | [U/I] this… I get one (1) more, so make it twenty (20). |
| TORO | Okay. |

66.     During this phone call TORO and MARIN continued to discuss the pending

methamphetamine transaction.  MARIN informed TORO that he [MARIN] was collecting the

"feria", which is Spanish for money, to complete the methamphetamine transaction.   Later in the

conversation, MARIN changed the quantity of methamphetamine he [MARIN] wanted from

nineteen to "twenty."

67.     At approximately 5:47 PM, a subsequent call was intercepted from TORO

using Target Telephone 13 to LOPEZ using Target Telephone 19.  The following is an excerpt of this phone call.

| NAME | TRANSCRIPTION |
|---|---|
|  | [Beginning of call] |
| LOPEZ | Sup? |
| TORO | Uh, stay alert because right now... go ahead and get ready and, and we will see when this fucker calls me.  He said because he wanted to go ahead, and leave right away.  All right? |
| LOPEZ | That's fine. |
| TORO | Is that fine? As soon as he calls me, I will let you know. |
| LOPEZ | [Aside: Background noise] It is set. |
| TORO | Okay, bye. |
| LOPEZ | All right, then. |
| TORO | Bye. [Aside: Background noise] |

68.     During this phone call TORO informed LOPEZ, "Uh, stay alert because right now, go ahead and get ready and, and we will see when this fucker [MARIN] calls me." He [MARIN] said because he wanted to go ahead, and leave right away. All right?" LOPEZ responds by stating, "That's fine." Based on my training and experience, I concluded TORO confirmed the methamphetamine transaction with LOPEZ by stating, "Is that fine? As soon as he calls me, I will let you know." LOPEZ responds, "It is set."

69.     Based on the above intercepted telephone communications, surveillance was established on TORO at the 500 Club casino located on the north/east corner of W. Shaw Ave

30

COMPLAINT AFFIDAVIT

1  and N. Willow Ave, Clovis, CA.  Surveillance was able to locate TORO based on prospective

2  location information being obtained from Target Telephone 13 pursuant to Wire Intercept Order

3  1:19-SW-00180-LJO.  During the investigation, TORO frequently visited the 500 Club.

4        70.        At approximately 5:55 PM, a subsequent call was intercepted from MARIN

5  using Target Telephone 10 to TORO using Target Telephone 13.  The following is an excerpt of

6  this phone call.

| NAME | TRANSCRIPTION |
|---|---|
| MARIN | I'm gonna take twenty (20).  You gotta give them to me cheaper, man. |
| TORO | Oh, I don't know about that. We don't say nothing. |
|  | [Voices overlap] |
| MARIN | I'm talking about, I'm talking about twenty (20), man.  You call that man up. [Background: Noise] I'm buying twenty (20). |
| TORO | Yeah, but [U/I].  We already give you that low… |
|  | [Voices overlap] |
| MARIN | Yeah, right, man! I'm not talking… it's not mine, it's for somebody else, man! Twenty (20), man. |
| TORO | Well, whatever.  We already gave you the best we can do, fucker. |
| MARIN | Man, you gotta tell him something! It, it it's a lot of that stuff around. Y'all want the money for twenty (20) or if y'all got, if y'all got that much money and can't get nobody a break, something wrong, man! |
| TORO | Yup. |

COMPLAINT AFFIDAVIT

71.      During this telephone call, MARIN and TORO argue about the price of the pending methamphetamine transaction. MARIN reminded TORO that he [MARIN] was ordering "twenty", stating "you got to give them to me cheaper." TORO stated they [TORO and LOPEZ] are already providing the methamphetamine "low", indicating a low price.

72.      During the above intercepted phone conversation, surveillance was being conducted at the 500 Club. Surveillance observed a Hispanic male, wearing a short sleeve flannel shirt, brown pants, with a white fedora type hat, described as 5'5 to 5'6 in height; exit the front doors of the 500 Club, begin smoking a cigarette, and talking on a cell phone. Based on the surveillance team comparing California Department of Motor Vehicle photo of TORO, they were able to positively identify the person described above as TORO.

73.      At approximately 6:00 PM, investigators intercepted a telephone call from TORO using Target Telephone 13 to MARIN using Target Telephone 10. During this conversation, MARIN again tried to negotiate a better price for "Twenty (20)," again, TORO did not want to negotiate the price with MARIN and stated, "When it's twenty (20) you're talking about two thousand (2,000), bro." Based on my training and experience, I concluded that TORO was referencing the price of $2,000 per pound for the methamphetamine transaction. I know this to be consistent with the current price of a pound of methamphetamine in the region.

74.      At approximately 6:02 PM, a subsequent telephone call was intercepted from TORO using Target Telephone 13 to LOPEZ using Target Telephone 19.

| NAME | TRANSCRIPTION |
|---|---|
| TORO | What is going on? [Chuckles] This asshole is really stupid, man. |
| LOPEZ | Huh. |
| TORO | He says that, that, he wants twenty (20) for twenty (20). I asked him, "Dude, are you dumb or what?" |

| | | |
|---|---|---|
| LOPEZ | [Chuckles] He is stupid. | |
| TORO | What I told him, "Well, no, you see that we already gave you, gave you the best that we could." | |
| LOPEZ | No. | |
| TORO | Yeah, I told him, no, no, "How are we supposed to give you twenty (20) for twenty (20)."   Well… | |
| TORO | [U/I]. You are talking about, almost what? [Background: Voices] Thirty (30) bucks, right?  How much is it, more or less? | |
| LOPEZ | Well at… in the [U/I], but how we are selling it at [U/I]… | |
| | [Voices overlap] | |
| TORO | At thirty-two (32), right? | |
| LOPEZ | Yes, [U/I]… | |

75.       During this telephone call, TORO and LOPEZ discussed MARIN's attempt to obtain a better price for the methamphetamine.  TORO informed LOPEZ that MARIN wanted "twenty for twenty", which I concluded was 20 pounds of methamphetamine for $20,000. TORO called MARIN "dumb" and "stupid" for suggesting this price.  TORO then indicated they [TORO and LOPEZ] were selling the methamphetamine at "thirty-two."  Based on my training and experience, I concluded that this was a reference to $32,000 for the 20 pounds of methamphetamine, and a reference to the price TORO and LOPEZ paid for the methamphetamine.  By selling the 20 pounds of methamphetamine to MARIN for $40,000, I concluded TORO and LOPEZ were planning to make an $8,000 profit from the transaction.

76.       At approximately 6:03 PM, a subsequent phone call was intercepted from

MARIN using Target Telephone 10 to TORO using Target Telephone 13. The following is an excerpt of this conversation.

| NAME | TRANSCRIPTION |
|---|---|
| MARIN | Go ahead and get the uh, the nineteen (19) ready, man. |
| TORO | Okay. |
| | [Voices overlap] |
| MARIN | Just get the nineteen (19) ready. |
| TORO | Thank you. |

77.     During this phone call, MARIN told TORO, "Go ahead and get the uh, the nineteen (19) ready, man." MARIN again reconfirmed the order stating, "Just get the nineteen (19) ready." TORO responded, "Okay." At this point in the sequence of conversations, based on my training and experience, I concluded MARIN stopped trying to renegotiate the price and confirmed he [MARIN] was going to get "nineteen." I concluded that this was a reference to nineteen pounds of methamphetamine.

78.     At approximately 6:04 PM, a subsequent phone call was intercepted from TORO using Target Telephone 13 to LOPEZ using Target Telephone 19. The following is an excerpt of this phone call:

| NAME | TRANSCRIPTION |
|---|---|
| TORO | ...[H]e does want the nineteen (19), he said. |
| LOPEZ | ...Okay. Did he say what time? |
| TORO | No, he didn't say, but was gathering the paper. Let me get closer to the house and, and, and I will go ahead and call you, to see what can be done. |

COMPLAINT AFFIDAVIT

| LOPEZ | All right, then. |
|-------|------------------|
| TORO  | Okay, bye.       |

79.     During this telephone call, TORO confirmed the methamphetamine transaction with LOPEZ stating, "That he [MARIN] does want the nineteen (19)." LOPEZ asked TORO when the methamphetamine transaction was going to occur. TORO responded, "He didn't say, but was gathering the paper." I know, based on my training and experience, that the term "paper" is commonly used by drug traffickers to refer to drug proceeds. Based on the intercepted information, and my training and experience, I concluded that TORO was informing LOPEZ that MARIN was gathering money for the pending methamphetamine transaction. TORO also stated he [TORO] was going to "get closer to the house", which I concluded was a reference to TORO returning to his [TORO's] residence in anticipation of the methamphetamine transaction with MARIN.

80.     At approximately 6:33 PM, investigators intercepted a telephone call from MARIN using Target Telephone 10 to TORO using Target Telephone 13. The following is an excerpt of this phone call.

| NAME | TRANSCRIPTION |
|------|---------------|
| MARIN | ...Coyote? |
| TORO | Hello? Yeah? |
| MARIN | How long is going to be, how long is going to be for you? How long y'all going to be? I got... My money but I ain't count it yet. |
| TORO | Okay, uh...give me half hour at the most. Okay? I be ready. |

| MARIN | Where we going to do it, where we going to do it at? |
| TORO | Uh…let me, let me get on position, I, I let you know, okay? |
| MARIN | All right, okay. |

81. Based on this intercepted conversation, MARIN and TORO continued to discuss the pending methamphetamine transaction. MARIN asked, "How long is going to be, how long is going to be for you? How long y'all going to be? I got my money but I ain't count it yet." TORO gave MARIN a time frame of a "half hour." MARIN then asked TORO, "Where we going to do it, where we going to do it at?" and TORO responded, "Uh…let me, let me get on position, I, I let you know, okay?" Based on my training and experience, I concluded MARIN was ready to complete the methamphetamine transaction and was asking TORO where the transaction was going to occur. TORO stated to MARIN that he [TORO] would call him back once he [TORO] was at the location.

    2. TORO and LOPEZ discussed meeting at TORO's house to conduct the transaction.

82. At approximately 6:38 PM, a subsequent phone call was intercepted from TORO using Target Telephone 13 to LOPEZ using Target Telephone 19. The following is an excerpt of this phone call.

| NAME | TRANSCRIPTION |
|---|---|
| TORO | Uh, I will be right there at the house. I do not know where you want to head to or what. |
| LOPEZ | [Background: Noise] You, you tell me how the area looks. |
| TORO | Well, I, I did not see anything, nothing looks bad right there. What we can |

36

| | | |
|---|---|---|
| 1 2 3 | | do is put…put it there in the guy's car. The one that he has parked right there and… |
| 4 | LOPEZ | Mhm. |
| 5 6 | TORO | I can stay right there. |
| 7 | LOPEZ | Okay. |
| 8 9 10 | TORO | And when he leaves… when, when it is over, I will call you so you can come by. |
| 11 12 | LOPEZ | Okay. |
| 13 14 | TORO | Then I will see you there right now. Go ahead and, and take off because that fucker is already nagging. |
| 15 16 | LOPEZ | Okay, I will head over there right now. |

83.      During this telephone call, TORO told LOPEZ first discussed where to do the pending methamphetamine transaction.  TORO informed LOPEZ that he [TORO] will be at the house and that "nothing looks bad right there."  Based on my training and experience, I concluded that TORO was informing LOPEZ that his [TORO's] residence would be a safe location to conduct the methamphetamine transaction.  TORO informed LOPEZ that, "when it is over, I will call you so you can come by."  Based on this statement, and my training and experience, I concluded that TORO would complete the methamphetamine transaction with MARIN and then meet with LOPEZ after the transaction was completed.  LOPEZ stated that he (LOPEZ) would "head over" to TORO's location.

///

///

COMPLAINT AFFIDAVIT

3.     Surveillance then observed TORO travel to his residence, and then inform LOPEZ that he was at his residence

84.     After this intercepted phone call, surveillance observed TORO exit the 500 Club, walking with another older Hispanic male, and depart the location as the passenger of a silver Chevy Equinox bearing Texas license plate # DT7S998.  Surveillance followed this vehicle to apartments at 3848 N. Hughes Ave, Fresno, CA[3].  Minutes later, this vehicle departed and precise location information from Target Telephone 13 indicated TORO remained at this apartment complex.

85.     At approximately 6:50 PM, a subsequent phone call was intercepted from TORO using Target Telephone 13 to LOPEZ using Target Telephone 19.  The following is an excerpt of this phone call.

| NAME | TRANSCRIPTION |
|------|---------------|
| TORO | I am at the house already. |
| LOPEZ | Okay.  I, I'm right here with this guy. I'll head over. |
| TORO | Okay, thanks. |
| LOPEZ | All right, bye. |

86.     During this phone call TORO told LOPEZ, "I arrived at the house already." LOPEZ responded by saying, "Okay.  I, I'm right here with this guy. I'll head over." Based on my training and experience, I concluded that TORO arrived back at his residence, and LOPEZ would be coming over to TORO's residence to drop off the methamphetamine.

///

///

---

[3] Based on precise location information from Target Telephone 13 and prior surveillance, TORO's apartment has been narrowed down to the structure on the south/west corner of the apartment complex. However, TORO's specific apartment number is currently unknown.

COMPLAINT AFFIDAVIT

4. MARIN then called TORO and informed TORO that the deal will be decreased from 19 pounds to 18 pounds; TORO relayed that information to LOPEZ

87. At approximately 6:56 PM, a subsequent telephone call was intercepted from MARIN to TORO using Target Telephone 13. The following is an excerpt of this telephone call.

| NAME | TRANSCRIPTION |
|---|---|
| MARIN | Hey, coyote!? |
| TORO | Yeah? |
| MARIN | It's just going to be uh… Eighteen (18). |
| TORO | Okay. |
| MARIN | The money for eighteen (18). |
| TORO | Okay. |

88. During this telephone call MARIN told TORO, "It's just going to be uh, Eighteen (18)." TORO responds, "Okay," and MARIN reiterates the order, "The money for eighteen (18)." Based on my training and experience, I concluded MARIN called TORO back and lowered his (MARIN's) order from twenty (20) pounds of methamphetamine to eighteen (18) pounds of methamphetamine.

///
///
///
///
///
///

COMPLAINT AFFIDAVIT

89.     At approximately 6:58 PM, a subsequent phone call was intercepted from TORO using Target Telephone 13 to LOPEZ using Target Telephone 19.  The following is an excerpt of this telephone call.

| NAME | TRANSCRIPTION |
|------|---------------|
| TORO | Uh, make sure it is just eighteen (18), boss. |
| LOPEZ | Just eighteen (18)?  Okay. |
| TORO | Yeah. |
| LOPEZ | All right. |
| TORO | Put Nene [PH] right here…. |
| LOPEZ | Okay then, that is fine. |
| TORO | Bye. |

90.     During this telephone conversation between TORO and LOPEZ, TORO said, "Uh, make sure it is just eighteen (18), boss." LOPEZ responds, "Just eighteen (18)?  Okay." Based on my training and experience, I concluded that TORO called LOPEZ to inform him [LOPEZ] that the order MARIN placed for twenty (20) pounds of methamphetamine, was now changed to eighteen (18) pounds of methamphetamine.  TORO then stated, "Put Nene right here." As will be subsequently described, "Nene" is a nickname TORO and LOPEZ use to refer to a drug courier who delivers drugs on behalf of LOPEZ.  Based on this information, and my training and experience, I concluded that TORO was asking LOPEZ to direct his [LOPEZ'] drug courier to deliver the methamphetamine to complete the transaction.

///
///
///

COMPLAINT AFFIDAVIT

5.     Agents observe LOPEZ's suspected runner arrive at TORO's complex, stay for roughly five minutes, then depart.

91.     At approximately 7:15 PM, SA Riley observed a blue Nissan sedan with California license plate #7HET771, identified in the past as LOPEZ's runner's vehicle, arrive at the north entrance to TORO's apartment complex accessed from Hughes Avenue.

92.     At approximately 7:18 PM, a subsequent phone call was intercepted from TORO using Target Telephone 13 to MARIN using Target Telephone 10. The following is an excerpt of this telephone call.

| NAME | TRANSCRIPTION |
|------|---------------|
| MARIN | Coyote!? |
| TORO | You ready, Coyote?  Come over. |
| MARIN | Huh? |
| TORO | Come over.  I'm over here. |
| MARIN | You ready? |
| TORO | Yeah. |
| MARIN | All right, okay. Bye.  You got eighteen (18)… |

93.     During this phone call TORO told MARIN, "Come over.  I'm over here." MARIN responded by stating, "You ready?" and TORO reaffirms to MARIN by stating, "Yeah." MARIN reconfirmed the order by stating, "You got eighteen (18)?"  TORO didn't specifically respond.  However, by TORO directing MARIN to his (TORO's) location, based on my training and experience, I concluded TORO was in possession of the methamphetamine which had just been delivered by LOPEZ's runner.

COMPLAINT AFFIDAVIT

94.     At approximately 7:19 PM, immediately after the phone call between MARIN and TORO, SA Riley observed the blue Nissan sedan with California license plate #7HET771 depart the north entrance of the TORO's apartment complex.  Based on this observation, and my training and experience, I concluded that LOPEZ's runner departed after delivering the methamphetamine to TORO.  After LOPEZ's runner departed, precise location information from Target Telephone 13 confirmed TORO remained at the apartment complex.

95.     Over the following thirty (30) minutes, a series of telephone calls were intercepted between MARIN using Target Telephone 10 and TORO using Target Telephone 13.  During these conversation, MARIN and TORO discussed the time MARIN would arrive at TORO's residence.  MARIN continues to inform TORO that he [MARIN] had to make "stops", however was on his [MARIN] way and would arrive shortly.

      6.     Agents see MARIN arrive at TORO's apartment complex, meet with TORO, and exchange white plastic bags

96.     At approximately 8:25 PM, surveillance observed MARIN driving north bound on Hughes Ave from Weber Ave.  MARIN was observed driving a black 4-door Mercedes E-Class with a dealer license plate.  MARIN was observed driving into a convenience store located directly across the street from TORO's apartment complex.  Surveillance observed MARIN exit the driver's seat of the vehicle and shut the front door.  It was at this time MARIN was observed by surveillance using a cell phone.

97.     At the time of this observation, the following telephone call was intercepted from MARIN using Target Telephone 10 to TORO using Target Telephone 13.  The following is an excerpt of this telephone call.

| NAME | TRANSCRIPTION |
|---|---|
| MARIN | I'm outside Coyote. |
| TORO | I see you at the street. |

| MARIN | [Aside: That is the one, shit] |
| TORO | Did you guys? |
| MARIN | [Aside: God damn!] |
| TORO | Hey? |
| MARIN | [Aside: [U/I].  Coming to my mother fucking car. My mother fucking car.] |

98.     During this phone call MARIN stated to TORO, "I'm outside Coyote," and TORO responds, "I see you at the street."  Based on my training and experience along with this phone call, confirmed MARIN had arrived at TORO's location to complete the methamphetamine transaction.

99.     At approximately 8:29 PM, surveillance observed MARIN walking towards TORO's apartment building with a white bag in his [MARIN] hand.  Contemporaneously, surveillance observed TORO walk from his [TORO's] apartment building carrying a white garbage bag with a box inside of the white bag.  Surveillance observed MARIN and TORO meet by parking stalls on the east end of TORO's apartment building.  Surveillance observed MARIN give the bag he [MARIN] was carrying to TORO, and MARIN took possession of the bag with the box inside that TORO brought out from his [TORO] apartment building.  After this exchange, TORO left and walked toward his [TORO's] apartment building.  MARIN was observed by surveillance exiting the apartment complex and walking back to his [MARIN's] vehicle carrying the package which he [MARIN] had just received from TORO.  MARIN was observed by surveillance placing the bag with the box inside, in the trunk of the vehicle. MARIN got into the driver's seat of the vehicle and left the location driving south bound on Hughes Ave.

///

///

COMPLAINT AFFIDAVIT

7.   Agents stopped MARIN and BROWN and located 18 pounds of methamphetamine in a white plastic bag in MARIN's trunk

100.   Based on the above intercepted telephone calls and surveillance, training, experience, education, and the totality of the investigation, it was concluded that MARIN had received eighteen pounds of methamphetamine from TORO.  Based on this information, a traffic stop was coordinated with Fresno Police Department Motor Officers.  Motor Officers Sanders and Larios, in full uniform, arrived in the area of Shields Avenue and Hughes Avenue and observed MARIN driving the black 4-door Mercedes south bound on Hughes Ave, without a front plate in violation of California Vehicle Code Section 5200.  Motor Officers Sanders and Larios initiated a traffic stop on the Mercedes sedan, operated by MARIN, in the area of Weber Avenue and Hughes Avenue, Fresno, CA.  MARIN yielded and was identified as the driver of the vehicle.  The passenger of the vehicle was identified as Quintin BROWN.

101.   Based on the investigation, Det. Michael Pierce arrived at the traffic stop with police drug detection canine "Buster" to assist.  Det. Pierce was a cross-trained as a canine handler and narcotics officer.  Buster was a narcotic detection canine who was trained to detect five (5) narcotics: methamphetamine, heroin, marijuana, cocaine, and opium.  Buster and Det. Pierce have been certified through the California Narcotics Canine Association, with the last certification being conducted on April 19, 2019.

102.   Upon arrival, Det. Pierce observed there were two (2) occupants being detained, MARIN and BROWN.  Det. Pierce deployed "Buster" on the outside of the vehicle, and found Buster positively alerted to the presence of narcotics inside the trunk and inside the passenger compartment of the vehicle. Buster was deployed inside the passenger compartment of the vehicle, in which Buster gave positive alerts to the presence of narcotics in the center console and the seams of the back seat of the vehicle.

103.   Det. Pierce opened the trunk and deployed Buster.  Buster provided positive alerts to the presence of narcotics inside a box that was inside a white plastic garbage bag, as well as a separate camouflage duffle bag.

104.   A search of the vehicle was then conducted which revealed approximately

1    eighteen (18) pounds of methamphetamine, ten (10) pounds of marijuana, and two (2) ounces of

2    black tar heroin inside the vehicle[4]. MARIN and BROWN were arrested on state drug charges.

3         105.      During the stop, MARIN made spontaneous statements claiming ownership of

4    the drugs found in the vehicle. However, during a subsequent post arrest interview, MARIN

5    denied knowledge of the drugs stating he [MARIN] had recently just took possession of the

6    vehicle. Neither MARIN nor BROWN provided information regarding the criminal activity of

7    TORO or identify TORO as the source of supply for the methamphetamine.

8         106.      Based on the intercepted phone calls, surveillance, and subsequent drug

9    seizure, and my training and experience, I concluded that MARIN ordered 18 pounds of

10    methamphetamine from TORO. TORO then ordered the methamphetamine from LOPEZ and

11    the methamphetamine was subsequently delivered by LOPEZ's runner to TORO's residence.

12    MARIN subsequently met with TORO at which time the 18 pounds of methamphetamine was

13    exchanged. MARIN placed the methamphetamine in his [MARIN's] Mercedes sedan which was

14    seized during the subsequent traffic stop.

15         8.      After the seizure, TORO and LOPEZ expressed concerns that MARIN
               was not answering his phone.

16       On June 19, 2019, a phone call was intercepted to TORO using Target Telephone 13 to

17    LOPEZ using Target Telephone 19. The following is an excerpt of this telephone call.

| NAME | TRANSCRIPTION |
|------|---------------|
| LOPEZ | What, what happened to the guy after all? Did he not call back? |
| TORO | He did not call back and, and he does not…. the fucker does not have a phone. Who knows what happened. |
| LOPEZ | All right then. So… so they must have gotten him. He is probably screwed. |

[4] A presumptive test was conducted on the methamphetamine seized from MARIN's vehicle which tested presumptive positive for methamphetamine.

| | | |
|---|---|---|
| 1 2 3 | TORO | Yeah, but I had the kid check on the… on the machine and he said it does not come up. |
| 4 | LOPEZ | No? |
| 5 6 | TORO | No. |
| 7 8 | LOPEZ | [Background: Noise.] Oh, shit! Oh, then we need to be careful because the people cause problems by investigating… |
| 9 10 | LOPEZ | It, it takes a while for it to get entered. |
| 11 | TORO | Yeah. |
| 12 13 | LOPEZ | We just need to be careful, that is all. |
| 14 | TORO | Yeah, well, no that is good. |
| 15 16 17 | LOPEZ | All right then. I was just worried since you did not call back, I thought, man! We were screwed. |
| 18 19 20 | TORO | Yeah, no, well, yeah… I did not say… well, that one, it was strange to me too because I am telling you that he had agreed to see me in the morning. |
| 21 | LOPEZ | Mhm. |
| 22 23 24 | TORO | And well you know how he is, "You better not miss," then he is just nagging and nagging. |
| 25 | LOPEZ | Yeah, he nags too much. Mhm. |
| 26 27 | TORO | And he did not say anything anymore, so then… well, then it is right |
| 28 | | |

| | | |
|---|---|---|
| | there... [Mumbles] this morning I asked him to check and see if this ma... this fucker is around there. | |
| LOPEZ | Uh, uh sometimes when you just enter a letter in a wrong letter, it will not come up. | |
| TORO | Oh, yeah? | |
| LOPEZ | Yes. The thing is that if you do not enter in exactly the way the name is spelled... Even if you make a mistake with a letter, or you do not enter it the way it should be, it will not show up. | |
| TORO | Oh yeah. | |

107.     Initially during this phone call, TORO and LOPEZ discuss a third party who did not call back. TORO stated "he did not call back" and LOPEZ responded "so they must have gotten him. He is probably screwed." I concluded this was a reference to MARIN being arrested by law enforcement on June 17, 2019. TORO informed LOPEZ that he [TORO] had a "kid" check on the "machine." Based on my training and experience, I concluded that TORO was referring to checking Fresno County Jail Records on line to see if MARIN was arrested. LOPEZ warned TORO, "be careful because the people cause problems by investigating," By stating this, based on my training and experience, I concluded that LOPEZ was concerned that the investigation of MARIN would lead to TORO. LOPEZ also makes the statement, "I was just worried since you did not call back, I thought, man! We were screwed." Based on my training and experience, I concluded that LOPEZ was worried about TORO being arrested and then both of them [TORO and LOPEZ] would be in trouble. LOPEZ and TORO then discussed entering the name correctly in the system which I concluded was a reference to making sure MARIN's name was spelled right to determine if he [MARIN] was in custody.

COMPLAINT AFFIDAVIT

1          9.      Agents confirm that LOPEZ is the user of Target Telephone 19.

2          108.      During this investigation, Carlos LOPEZ was initially intercepted using phone

3    number 209-581-6014 (Target Telephone 16) communicating with David MARIN during Wire

4    Intercept 1:19-SW-00087-LJO.  On April 2, 2019, surveillance was conducted of a suspected

5    drug transaction between MARIN and LOPEZ at 2355 S. Martin Luther King Jr. Blvd, Fresno,

6    CA, which is the location of MARIN's used car lot.  This transaction was arranged during

7    intercepted communications between MARIN using phone number 559-681-9933 (Target

8    Telephone 10) and LOPEZ using phone number 209-581-6014 (Target Telephone 16).  During

9    this transaction, LOPEZ was observed driving a Chevrolet Silverado pickup with California

10   license plate #15767D2.  This vehicle is registered to LOPEZ (under his alias "Carlos FELIX", a

11   known alias used by Carlos Felix LOPEZ) with a listed address of 4216 W. Dudley Ave, Fresno,

12   CA, an address LOPEZ provided to his probation officer. After LOPEZ departed the location, a

13   traffic stop was conducted on this vehicle and LOPEZ was identified as the driver of the vehicle

14   from a valid California driver's license.  Furthermore, Det. Medeles, who was present at the stop

15   of LOPEZ, called phone number 209-581-6014 from an undercover phone and observed the

16   undercover number displayed on a phone in LOPEZ' possession; thus, confirming LOPEZ' use

17   of Target Telephone 16.

18         109.      Call detail records (CDRs) indicated LOPEZ discontinued use of Target

19   Telephone 16 on or around June 9, 2019.  To identify LOPEZ' replacement phone for Target

20   Telephone 16, a common call analysis was conducted.  CDRs were collected on phone numbers

21   in frequent contact with Target Telephone 16 prior to becoming inactive.  CDRs from these

22   phone numbers showed a common phone number of 559-803-0440 (Target Telephone 19) being

23   contacted beginning on or around June 10, 2019.  CDRs and subscriber information was obtained

24   for Target Telephone 19.  Subscriber information showed Target Telephone 19 was activated on

25   June 4, 2019 and is subscribed to "Jose Ramirez" with a listed address of 4993 E. Kings Canyon

26   Road, Fresno, CA.  This address is a Cricket cellular phone store.  CDRs for Target Telephone

27   19 showed minimal incoming call activity between June 4, 2019 and June 10, 2019. CDR

28

1  showed on June 10, 2019, calls, texts, and data usages for Target Telephone 19 significantly

2  increased.  This is also the day after LOPEZ discontinued use of Target Telephone 16 and is

3  consistent with LOPEZ beginning to use Target Telephone 19 the day after discontinuing use of

4  Target Telephone 16.

5        110.        To confirm this transition, CDRs from June 10, 2019 to June 16, 2019 for

6  Target Telephone 19 were compared with prior CDRs from Target Telephone 16.  Between June

7  10, 2019 and June 16, 2019, Target Telephone 19 was in contact with 39 different phone

8  numbers.  Of these 39 different phone numbers, 28 were previously in contact with Target

9  Telephone 16.  Nine out of the top ten most frequently contacted phone numbers in contact with

10 Target Telephone 19 were previously in contact with Target Telephone 16.  Between June 10,

11 2019 and June 16, 2019, 629 communications occurred over Target Telephone 19.  Of these 629

12 communications, 513 occurred with phone numbers previously in contact with Target Telephone

13 16.  Therefore, over 81% of communications which occurred over Target Telephone 19 were

14 with phone numbers previously in contact with Target Telephone 16.  Furthermore, most of the

15 common callers between Target Telephone 16 and Target Telephone 19 showed a distinct

16 pattern of terminating communications with Target Telephone 16 and, on the same day or within

17 days, initiating communication with Target Telephone 19.

18       111.        Due to the high number of common callers, the crossover of call activity, and

19 the calling pattern described above, investigators determined that LOPEZ replaced Target

20 Telephone 16 with Target Telephone 19 on or around June 10, 2019.

21       112.        On June 17, 2019, investigators intercepted conversations between Armando

22 TORO, using Target Telephone 13 (559-728-8128), Unknown Male ("UM") using telephone

23 number 559-728-1212 ("UM1212"), Carlos LOPEZ using 559-803-0440 ("Target Telephone

24 19"), Michael GARCIA ("M/GARICA") using telephone number 559-579-0881, and Ruben

25 GARCIA ("R/GARCIA") telephone number 559-776-5837.

26       113.        At approximately 11:29 AM, UM1212, using telephone number ("TN") 559-

27 728-1212, called TORO, using TT13. In summary of call number 71, TORO and UM1212, while

28

49

COMPLAINT AFFIDAVIT

1   conversing in Spanish, greeted each other and UM1212 requested TORO to bring one (1). TORO

2   affirmed and stated he would be ready in half to an hour. Based on my background and the

3   context of the investigation, I believe UM1212 was attempting to order narcotics as the word

4   "one" was defined for a quantity of narcotics.

5         114.         With information from the intercepted conversations, surveillance was

6   established in the vicinity of N Hughes Avenue and W Dakota Avenue, Fresno, CA. The area

7   was identified, via prospective location information (hereinafter referred to as "pings" and/or

8   "ping"), as being TORO's residence.

9         115.         At approximately 11:40 AM, TORO, using TT13, contacted LOPEZ, using

10   TN 559-803-0440 ("Target Telephone 19"). In summary of call 74, TORO informed LOPEZ,

11   conversing in Spanish, he [TORO] was in dire need of "tripas de pollo". LOPEZ informed

12   TORO he [LOPEZ] would have to obtain the "tripas de pollo" from "EL NENE.". TORO

13   understood and requested LOPEZ to inform TORO when LOPEZ obtained the "tripas de pollo".

14   Based on my background, I concluded TORO requested for a quantity of narcotics when he

15   [TORO] asked, in coded language, LOPEZ for "tipas de pollo". LOPEZ then responds that he

16   [LOPEZ] would need to obtain the narcotics from LOPEZ's runner.

17         116.         At approximately 1:00 PM, TORO, using TT13, contacted LOPEZ, using

18   Target Telephone 19. In summary of call 76, TORO asked LOPEZ, conversing in Spanish, what

19   was the status. LOPEZ asked if TORO could wait a little longer as LOPEZ was expecting for his

20   [LOPEZ] associate to deliver it to him [LOPEZ]. Once he receives the item, LOPEZ would bring

21   it to TORO.

22         117.         At approximately 1:01 PM, TORO, using TT13, called R/GARICA, using

23   TN 559-776-5837. In summary of call 77, TORO asked R/GARICA, conversing in Spanish,

24   regarding his [R/GARICA's] whereabouts. R/GARICA noted he was on Herndon and

25   Blackstone. R/GARICA told TORO he [R/GARICA] was delivering food and would be free in

26   five minutes. TORO told R/GARICA he [TORO] would contact R/GARICA shortly. Based on

27   my background, I concluded TORO contacted R/GARCIA to receive a ride; however,

28

1  R/GARICA noted he was out delivering food and would be available afterwards. During this

2  investigation, I observed TORO taking public transportation and did not observed TORO

3  operating a vehicle.

4       118.     At approximately 1:23 PM, TORO, using TT13, called M/GARICA, using

5  TN 559-579-0881. In summary of call 80, TORO asked M/GARICA, conversing in Spanish, for

6  M/GARICA's whereabouts. M/GARICA informed TORO he [M/GARICA] was home and

7  asked if TORO could come by. TORO stated he would be there in a little bit and asked if

8  M/GARICA wanted the same deal. M/GARICA affirmed. Based on my background, I concluded

9  M/GARICA was asking TORO for narcotics. TORO then agreed to bring M/GARICA narcotics

10  when he [TORO] informed M/GARICA he [TORO] would be there in a little bit.

11       119.     At approximately 2:01 PM, LOPEZ, using TN 559-803-0440, called TORO,

12  using TT13. In summary of call 81, LOPEZ asked TORO, conversing in Spanish, his

13  whereabouts. TORO informed LOPEZ that he [TORO] was at home. LOPEZ told TORO he

14  would see TORO shortly. Based on my background and the context of the investigation, I

15  concluded LOPEZ and R/GARCIA would be visiting TORO to complete UM1212 and

16  M/GARCIA's narcotic orders.

17       120.     At approximately 2:02 PM, TORO, using TT13, called R/GARCIA, using

18  TN 559-776-5837. In summary of call 82, TORO asked R/GARCIA, conversing in Spanish,

19  R/GARICA's whereabouts. R/GARICA's noted he was on Bullard and West. TORO asked

20  R/GARICA's if he had to deliver food. R/GARICA's stated he had to go to Wal-Mart and would

21  be done in five minutes. TORO directed R/GARICA's to come over in half an hour when

22  GARCIA was free from delivering food. GARCIA asked TORO if the meet would be at TORO's

23  house. TORO affirmed and said in 20 minutes because he [TORO] had to wait for his associate

24  to come. GARCIA responded to TORO's directive with meeting TORO in 20 minutes. Based on

25  my background, my understanding of the investigation, and the series of intercepted

26  communication, TORO was asking R/GARICA to come over to TORO's apartment to transport

27  TORO to his [TORO's] drug customer. R/GARICA then informed TORO he [R/GARICA]

28

1   would be there in 20 minutes.

2        121.       At approximately 2:18 PM, I observed a black 2016 Nissan Sentra sedan

3   (hereinafter referred to as the Nissan) arrived to 3848 N Hughes Ave., Fresno, CA and parked in

4   the southern parking section of the Alder Heights apartment (3848 N Hughes Ave., Fresno, CA).

5   The Nissan was driven by R/GARCIA and displayed California license plate 7NTN886,

6   registered to Mercedes L GARCIA of 961 N Fruit Avenue, Fresno, CA. R/GARCIA was

7   identified after surveillance when I inquired about the register owner of the Nissan, which listed

8   R/GARCIA as having the same address listed on commercial databases, and with the Department

9   of Motor Vehicles.

10       122.       As GARCIA was parking the Nissan, I observed an adult Hispanic male,

11  identified as Armando TORO via Department of Motor Vehicle photo, walking out of the

12  apartment complex. TORO described as approximately 5'4" to 5'6", dressed in a short sleeve

13  black/white flannel shirt, with brown pants, and a white fedora hat. TORO walked out and

14  dumped trash into a receptacle and walked back into the apartment complex.

15       123.       At approximately 2:21 PM, R/GARCIA, using TN 559-776-5837, called

16  TORO, using TT13. However, there was no connection made. I then observed TORO

17  reappearing from the apartment side and walked towards R/GARCIA, who was still sitting in the

18  driver seat of the Nissan.

19       124.       At approximately 2:24 PM, I observed a silver Chevy Tahoe ("the Tahoe")

20  approached TORO and GARCIA. The Tahoe, displayed California license plate 7EGB990,

21  registered to Modesta QUINTERO-BELTRAN of 2418 W Garland Ave., Fresno, CA, and driven

22  by an adult Hispanic male, later identified as Carlos LOPEZ, wearing red clothing. Modesta

23  QUINTERO-BELTRAN was identified as LOPEZ's wife.

24       125.       At approximately 2:25 PM, I observed both the Tahoe and Nissan departed

25  the apartment complex and headed towards Dakota Avenue. The Nissan traveled westbound and

26  the Tahoe traveled eastbound on W Dakota Avenue. As they departed the apartment's parking

27  lot, SA Jay Dial observed the Tahoe traveled southbound on N Hughes Avenue and arrived to

28

COMPLAINT AFFIDAVIT

1    Clinton Avenue and N Weber Avenue. The Tahoe was observed entering the parking lot of

2    Vallarta Supermarkets, located on 1951 W Clinton Ave., Fresno, CA.

3         126.       As surveillance units maintained observation on LOPEZ's Tahoe, LOPEZ,

4    using 559-803-0440 ("Target Telephone 19"), called TT13, used by TORO. In summary of call

5    90, LOPEZ called TORO, conversing in Spanish, told TORO to be careful because some

6    vehicles were behind him. LOPEZ mentioned a black truck and a Ford. TORO stated he

7    observed other vehicles as well. LOPEZ stated he went into a store and notice the vehicles and

8    cautioned TORO to be on alert.

9         127.       On October 17, 2019, I conducted a voice comparison between calls that were

10   made between TORO, Target Telephone 16, and Target Telephone 19 and determined the user,

11   Carlos LOPEZ, of Target Telephone 16 was the user of Target Telephone 19.

12        128.       Based on the series of calls and surveillance observations, I concluded that the

13   user of telephone number 559-803-0440 ("Target Telephone 19") was Carlos Javier LOPEZ, the

14   previous user of Target Telephone 16 and eventually, Target Telephone 22.

15   **D.      On August 8, 2019, Agents searched DELGADILLO's residence and seized**
     **approximately ½ kilogram of cocaine**
16

17        129.       On August 8, 2019, detectives of the Fresno Police Department, assisted by

18   members of Group 1, DEA Fresno District Office, serviced a California State search warrant at

19   2143 S Tupman Avenue, Fresno, CA, a location identified during surveillance as the residence of

20   DELGADILLO.  When they arrived, DELGADILLO, as well as certain family members

21   including his son, Angel Delgadillo, Jr. were located inside the residence.

22        130.       · Prior to a thorough search of the premises, Det. Pierce deployed his police

23   drug detection canine, Buster into the residence to conduct a search for the presence of narcotics.

24   As the canine inquired through the residence, Buster alerted to positive presence of narcotics in

25   the primary bedroom and the garage. Investigators then conducted a thorough search of the entire

26   residence. SA Paul Wanta located a black bag with white powdery substance, suspected to be

27   cocaine, hidden an attic crawl space in the garage, the location of a positive alert by Buster. This

28

53

1   white powdery substance was later tested at the DEA laboratory that revealed the white powdery

2   substance was approximately 587.9 grams of cocaine.

3       131.     Meanwhile, SA Troy Jarrett and TFO Sharp located a clear baggy of white

4   powdery substance, on the drawer in the master bedroom, and numerous cellphones, which

5   DELGADILLO admitted the cellphones belonged to him. The white powdery substance was

6   later tested at the DEA laboratory that revealed it to be approximately 1.5g of cocaine.

7   Additionally, during the search of the master bed room, SA Jarrett and TFO Sharp located a

8   combination safe that DELGADILLO was able to provide the combination for. The search of the

9   safe and the rest of the room revealed United States currency, totaling to approximately $24,620,

10   throughout. When investigators located the money, Det. Pierce deployed Buster onto the cash

11   which revealed positive presence of narcotics. Based on the items found the master bedroom,

12   knowledge of the safe, and claiming the cell phones were his, I concluded the master bedroom

13   belonged to SENIOR.

14       132.     During the conclusion of servicing of the search warrant, TFO Sharp and Det.

15   Medeles interviewed DELGADILLO and his son Angel Delgadillo, Jr.

16       133.     Prior to TFO Sharp and Det. Medeles interviewing Angel Delgadillo, Jr., TFO

17   Sharp using his department issued Miranda card read to Angel Delgadillo, Jr. the advisement of

18   rights. Angel Delgadillo, Jr. stated understood and agreed to speak to TFO Sharp. During the

19   interview, Angel Delgadillo, Jr. told TFO Sharp that he had been living at 2143 S Tupman for

20   approximately 12 years, uses telephone number 559-385-3108, and DELGADILLO was his

21   father. Angel Delgadillo, Jr. was informed that law enforcement had located the suspected

22   cocaine and a large amount of currency. Angel Delgadillo, Jr. admitted he had been selling

23   cocaine for "about a year." Angel Delgadillo, Jr. reported the Nissan, bearing CA license plate

24   6EPP147 (seen on surveillance stop at MARIN's residence prior to MARIN's sale of the

25   approximately ¼ kilogram of cocaine to WARSINGER and MARSHALL on March 31, 2019)

26   was only driven by his father, DELGADILLO.

27       134.     After interviewing Angel Delgadillo, Jr., Det. Medeles and TFO Sharp

28

1  interviewed DELGADILLO. Det. Medeles using department issued Miranda card read to

2  DELGADILLO the advisement of rights. DELGADILLO stated he understood and agreed to

3  speak to Det. Medeles. DELGADILLO denied any knowledge of narcotics.  DELGADILLO

4  reported all the proceeds found in the house, to include the money found in the safe, were from

5  legitimate sources. DELGADILLO reported he does not know why there was a canine alert to

6  the cash found in the master bedroom and the money found in the safe. Based on my training and

7  experience and knowledge of the investigation, I believe that DELGADILLO possessed the

8  approximately 587.9 grams of cocaine found in the residence.

9        **E.**     **TRANSACTION #4 - On October 6, 2019, agents seized approximately 3.5**

10  **kilograms of cocaine and 5 pounds of methamphetamine from Jose BOJORQUEZ,**
    **a runner for LOPEZ's Mexican Source of Supply (SOS2).  The narcotics were**

11  **destined for** 

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AFFIDAVIT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



[black redaction bar covering lines 1-4]

3.     On October 3, 2019, LOPEZ discussed with Source of Supply #2 (SOS2) furnishing a load of suspected narcotics to LOPEZ on October 5 through the use of a courier

149.     That same afternoon, October 3, 2019, LOPEZ spoke with an Unidentified Male (Source of Supply #2 or "SOS2"), believed to be LOPEZ's source of supply. SOS2 was using a Mexico-based telephone number. In summary, during the text message exchange LOPEZ asked SOS2 if SOS2's relative would be arriving tomorrow and LOPEZ explains that a friend of LOPEZ' needs help the following afternoon. SOS2 told LOPEZ that the relative would be arriving tomorrow and that he (SOS2) was ready.

150.     Based on my training and experience I believe that LOPEZ was explaining that he had a customer [redacted] who wanted to obtain narcotics, and that LOPEZ wanted to confirm that SOS2 could furnish the narcotics.

151.     At approximately 10:09 PM, SOS2 called LOPEZ. In summary, SOS2 explained that he (SOS2) had sent a message to the courier but had not heard back. LOPEZ told SOS2 that he (LOPEZ) did not have a different phone number for the courier. SOS2 explained that he would have family attempt to contact the courier. LOPEZ said he (LOPEZ) would try to call the courier and if the courier answered then LOPEZ would tell the courier to call SOS2.

152.     At approximately 10:14 PM and 10:25 PM, LOPEZ made two outgoing phone calls to Jose BOJORQUEZ, the user[5] of 925-483-5162 ("TN-5162"), and the suspected courier.

_____

[5] On October 2, 2019, agents conducted surveillance on the user of 925-483-5162 (TN-5162) after the user of TN-5162 met with LOPEZ at Belmont Market, located on 3777 W Belmont Avenue, Fresno, CA. Agents observed BOJORQUEZ, exited a gray Toyota Corolla, bearing California license plate 7VDW877 (registered to Jose G BOJORQUEZ of 3910 E Nevada Ave., Fresno, CA) via BOJORQUEZ's Department of Motor Vehicle ("DMV") photograph while he met with LOPEZ in front of LOPEZ's truck. Agents then followed the Toyota, driven by BOJORQUEZ, from Belmont Market to 3910 E Nevada Avenue, Fresno, CA (the DMV address

COMPLAINT AFFIDAVIT

1  Both outgoing phone calls were unanswered and went to BOJORQUEZ's voicemail.  Agents

2      153.        On October 4, 2019, at approximately 7:26 AM, SOS2 begun another text

3  message exchange with LOPEZ.  In summary, SOS2 told LOPEZ that the "relative" had been

4  asleep.  Additionally, SOS2 said "He entered very early today" and "He'll head over early

5  tomorrow."  Based on my training and experience when SOS2 says "he entered very early today"

6  and "He'll head over early tomorrow" SOS2 was explaining that the load of narcotics had

7  entered the country early in the morning and that the courier had agreed to pick up the load of

8  narcotics early tomorrow.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          5.        LOPEZ and BOJORQUEZ postponed the suspected narcotics transaction
          one day, to October 6, 2019

24      158.        On October 5, 2019,

25                                            .  LOPEZ later called BOJORQUEZ who told LOPEZ that

26

27  for BOJORQUEZ).  Based on the information derived from the intercepted communications and
    surveillance, agents identified BOJORQUEZ as the user of TN-5162.

28

1  BOJORQUEZ had not left and BOJORQUEZ had been instructed to wait until October 6, 2019.

2  BOJORQUEZ told LOPEZ that he would leave the following morning.

3  159.  Based on this call, agents believed that BOJORQUEZ was the courier that

4  LOPEZ had been discussing with SOS2 who planned to deliver the drugs from SOS2 to LOPEZ.

5  160.  LOPEZ later exchanged text messages with SOS2 and reiterated that his

6  friend was waiting.  SOS2 said "he" (believed to be BOJORQUEZ) said he would be arriving at

7  "7:00 in the morning or earlier."



61

163.     Surveillance followed BOJORQUEZ █████████████

███████████████████████████████████████████████

██████████████████████████ BOJORQUEZ met with an unidentified male.████████

████████████████████████████████████████████████████████

████████████     The male removed a dark colored duffel bag and handed it to BOJORQUEZ.

The male and BOJORQUEZ talked for a short period while BOJORQUEZ placed the duffel bag

into the trunk of his vehicle. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

7.     Agents stop BOJORQUEZ in Kern County and seize 3.5 kilograms of cocaine and 5 pounds of methamphetamine.

164.     SA Riley coordinated assistance from the California Highway Patrol ("CHP")

and Kern County HIDTA█████████████████████████████████████

Subsequently, a traffic stop was conducted on BOJORQUEZ vehicle. During the traffic stop,

CHP conducted a canine inquiry on BOJORQUEZ's vehicle which resulted in a positive alert to

the presence of narcotics. After the canine inquiry, a thorough search of BOJORQUEZ's vehicle

was conducted and revealed, approximately, 3.5 kilograms of suspected cocaine and five (5)

pounds of methamphetamine in a duffel bag.

COMPLAINT AFFIDAVIT



**F.** **TRANSACTION #5 - On October 14, 2019, agents seized two kilograms of cocaine brokered by LOPEZ** ▮▮▮▮▮▮▮▮▮▮ **and delivered to Monica GUTIERREZ** ▮▮▮▮

168.     On October 13, 2019, ▮▮▮▮▮▮▮▮▮

169.     At approximately 5:12 PM, LOPEZ spoke with Mexican Source of Supply (SOS1). In summary of their conversation, the SOS1 informed LOPEZ that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ would be leaving tomorrow morning.  LOPEZ said that the courier could meet with LOPEZ's female friend (later identified as Monica GUTIERREZ).  LOPEZ told SOS1 to have the courier to go Mendota.  SOS1 agreed.

171.     Investigators then intercepted a series of text messages between LOPEZ and Monica GUTIERREZ (GUTIERREZ), using 559-776-5820 ("TN-5820"). In summary, LOPEZ informed GUTIERREZ that tomorrow (October 14, 2019), "they" would be visiting her so that she could go to the "dealer." GUTIERREZ affirmed and told LOPEZ to "let me know." LOPEZ clarified, "I'm not over there. They're going take them over there to you." GUTIERREZ responded she understood and thanked LOPEZ. LOPEZ stated "Okay, they are going to call you. She then asked LOPEZ to let her know when they are close by.

172.     At approximately 7:44 PM, SOS1 sent a text message to LOPEZ to update LOPEZ on the arrival of the narcotics. SOS1 wrote, "it's done, he will arrive like around 8:00 or 9:00." (believed to be 8:00 am or 9:00 am the following morning, October 14, 2019). LOPEZ then replied, "OK".

173.     Based on the aforementioned intercepted conversations, the next day, October 14, 2019, at approximately 6:55 AM, special agents of the DEA Fresno District Office, FPD detectives, and deputies of the Fresno County Sheriff's Office ("FSCO"), established surveillance 1782 9th Street, Mendota, CA. The location was selected for surveillance based on prospective location information, authorized under court order 1:19-SW-00330-BAM, of GUTIERREZ telephone (TN-5820), and listed subscriber address for GUTIERREZ, as well as the intercepted comment between LOPEZ and SOS1 in which LOPEZ told SOS1 to send the courier to Mendota.

174.     As surveillance was being conducted on GUTIERREZ's residence, investigators intercepted a text messaged from an unknown individual, using 951-226-2097 ("TN-2097") and stated he would arrive at 8:45. Afterwards, LOPEZ was contacted by his SOS1 and requested for the female friend's number. LOPEZ then provided GUTIERREZ's telephone number to the SOS1.

175.     At approximately 9:01 AM, Deputy ("Dep.") Rich Conningsby observed a white Nissan sedan, bearing CA license plate 7EVP912 arrived at the residence and parked into

64

COMPLAINT AFFIDAVIT

1    the parking stall. Agents saw no other vehicles arrive at the residence between approximately

2    7:00 am when they established surveillance until approximately 9:01 am, when the white Nissan

3    arrived.

4               176.        GUTIERREZ exited the house and met with the driver of the white Nissan.

5               177.        Based on the intercepted communications and timing of his arrival, agents

6    believed that the driver of the white Nissan was the user of telephone number 951-226-2097,

7    who had informed LOPEZ via text message minutes earlier that he would arrive at 8:45.

8               178.        At approximately 9:03 AM, the driver of the Nissan walked behind the

9    Nissan and opened the trunk. SA Shawn Riley observed the driver retrieve a light-blue duffle

10    bag, that appeared to be filled (having weight), from the trunk and walked into the residence with

11    GUTIERREZ.

12              179.        At approximately 9:06 AM, SA Riley observed the driver leave the residence

13    with a light-blue duffle bag in hand. However, the light-blue duffle bag appeared to be empty.

14    SA Riley observed the driver throw the light-blue duffle bag into the rear passenger seat, and

15    drive away.



22              181.        During the same time as agents were identifying MORENO, at

23    approximately 9:09 AM, Dep. Conningsby observed GUTIERREZ, holding a white bag, enter a

24    gray Kia sedan, bearing CA license plate 7HOK625, and depart the residence. Surveillance units

25    continued to follow her as she departed and headed northbound towards Salinas, CA.

26              182.        At approximately 9:27 AM, FCSO's canine team, Dep. Patricia Varela and

27    Dep. Isidro Ruelas, conducted a traffic stop of GUTIERREZ on Highway Route 33 and 13th

COMPLAINT AFFIDAVIT

1  Street, Firebaugh, CA. Subsequently, deputies identified GUTIERREZ by driver's license.  The

2  FCSO canine alerted to the odor of narcotics emanating from the vehicle. Deputies then searched

3  the vehicle and located two (2) brick-like bundles of suspected cocaine inside a white bag, a

4  baggie with multiple small bindles of suspected cocaine, and a baggie with multiple small

5  bindles of suspected methamphetamine. Agents also seized GUTIERREZ's a cellular telephone.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21      186.    **SEALING REQUEST**.  I further request that the Court order that all papers

22  in support of this application, including the affidavit and search warrant, be sealed until further

23  order of the Court.  These documents discuss an ongoing criminal investigation that is neither

24  public nor known to all of the targets of the investigation.  Accordingly, there is good cause to

25  seal these documents because their premature disclosure may seriously jeopardize that

26  investigation.

27  ///

28

1

### IV.    CONCLUSION

2

3      187.      Based on the foregoing, I believe there is probable cause for the issuance of a

4  criminal complaint and arrest warrants for David Michael **MARIN**, Angel **DEGADILLO** Sr.,

5  ███████████████████████████████████████████████████████████████

6  ████  Armando Acosta **TORO**, Carlos Javier Felix **LOPEZ**, Jose **BOJORQUEZ**, Monica

7  **GUTIERREZ**, ████████████████████████████████  violated Title 21 United

8  States Code § 841 (a)(1) - Distribution and possession of controlled substances with intent to

9  distribute; aid and abet.

10

11

12

                                    Michael Vo
13                                  Special Agent
                                    Drug Enforcement Administration
14                                  United States Department of Justice

15  SWORN TO BEFORE ME, AND SUBSCRIBED
16  IN MY PRESENCE THIS DAY

17  _November 7, 2019_
18  (Date)

19

20  _Sheila K. Oberto_
    Honorable Sheila K. Oberto
21  U.S. Magistrate Judge

22

23  Reviewed and approved as to form:

24  _____  11/5/19
    By Jeffrey A. Spivak
25  Assistant United States Attorney
    United States Attorney's Office

26

27

28

COMPLAINT AFFIDAVIT

**Attachment 2 – Summary of Transactions**

| SUMMARY | DETAILS | SEIZURES |
|---|---|---|
| **(1) The March 2019 Transaction: Nine Ounces of Cocaine**<br><br>David Michael **MARIN** (1)<br>Angel **DELGADILLO** (2)<br>███████ | March 2019, ███████ contacted MARIN to obtain narcotics for ███████. MARIN then calls DELGADILLO to purchase narcotics. MARIN then provided to ███████ who then supplied to ███████ | 3-31-2019, ███████ was arrested with approximately 9 ounces of cocaine after leaving from ███████ apartment. |
| ███████████████████████████████ | ███████████████████████████████ | ███████████████████████████████ |
| **(3) The July 2019 Transaction: 18 pounds of methamphetamine**<br><br>David Michael **MARIN** (1)<br>Armando Acosta **TORO** (7)<br>Carlos Javier Felix-**LOPEZ** (8) | July 2019, MARIN contacted TORO, who then contacts LOPEZ, to purchase 18 pounds of methamphetamine for a third party. | 6-17-2019, MARIN and BROWN were arrested with approximately 18 pounds of methamphetamine after MARIN was seen leaving TORO's apartment. |
| **(4) The October 6, 2019 Transaction:  3.5 kg cocaine and 5 lbs meth.**<br><br>Carlos Javier Felix-**LOPEZ** (8)<br>Jose Guadalupe **BOJORQUEZ** (9)<br>███████ | October 2019, ███████ LOPEZ coordinated with Mexico-Source of Supply to obtain narcotics. The Mexico-Source of Supply sent BOJORQUEZ to meet with LOPEZ then BOJORQUEZ met with an unidentified individual to obtain a black bag in Pomona, CA. | 10-6-2019, BOJORQUEZ was arrested after receiving the black bag, which later identified, containing approximately 3.5 kilograms of cocaine and 5 pounds of methamphetamine. |
| **(5) The October 14, 2019 Transaction:  2 kg cocaine**<br><br>Carlos Javier Felix-**LOPEZ** (8)<br>Monica **GUTIERREZ** (10)<br>███████ | ███████ LOPEZ coordinated with Mexico-Source of Supply to obtain narcotics ███████ LOPEZ directs GUTIERREZ to meet with ███████ | 10-14-2019, after GUTIERREZ met with ███████ a traffic stop was conducted on GUTIERREZ which revealed she had approximately 2 kilogram of cocaine in her possession. |